STATE OF NORTH CAROLINA v. MICHAEL GARRETT

No. 8823SC658

(Filed 21 February 1989)

**1. Homicide § 30.2 — shooting of brother — sufficiency of evidence of voluntary manslaughter**

Evidence was sufficient to go to the jury and to support a verdict of voluntary manslaughter where it tended to show

that defendant and his brother argued; defendant had a gun; another brother heard a shot go off; minutes later defendant was observed shutting his car trunk and driving away; seven months later the brother's body was found over a cliff about five miles from the place where the argument occurred; defendant confessed to another brother that he shot the victim; and defendant's sister and mother testified that defendant stated that he didn't mean to shoot his brother.

## 2. Homicide § 28.8— failure to instruct on accident—error

The trial court erred in failing to instruct the jury on the defense of accident where the State offered no eyewitness to the shooting and killing of defendant's brother; evidence against defendant was largely circumstantial; the only evidence as to exactly how the shooting occurred came from defendant himself through the testimony of his sister and mother; and both of them as witnesses for the State testified that defendant stated that the shooting was accidental.

APPEAL by defendant from *Mills, Judge.* Judgment entered 16 October 1987 in Superior Court, ASHE County. Heard in the Court of Appeals 13 February 1989.

This is a criminal action wherein defendant was charged in a proper bill of indictment with the murder of Danny K. Garrett, his brother, in violation of G.S. 14-17. Evidence presented at trial tends to show the following:

On 18 October 1985, defendant and his brothers, Junior and Danny, had been drinking when they began to argue about beer cans. The argument began because the brothers often sold the used cans for recycling. Valarie, the sister of defendant, called the sheriff because of the argument. Deputies arrived, but they soon left because the disturbance had died down.

Junior then went to bed, but the dispute again broke out between defendant and Danny in Junior's bedroom. After the brothers' mother chased defendant and Danny out of the house, Junior got out of bed and went back outside where his brothers were arguing. Meanwhile, defendant had gone to his trailer to get his car keys, and a witness heard him say, "let me get my gun. I'll show that 'nigger.'"

When Junior reached his brothers, they were still arguing. As he walked between them, Junior saw defendant pointing a gun

STATE v. GARRETT

[93 N.C. App. 79 (1989)]

toward the ground. He then heard a shot go off and felt gravel hit his hand. Junior decided he should leave, and after getting about one hundred yards away, he heard another shot. No one witnessed the second shot, but minutes later defendant was seen hastily shutting his car trunk and driving away. Junior later told police he had seen defendant putting Danny into defendant's car trunk, but Junior denied this at trial. Junior and another witness told police they had seen defendant washing out his car trunk the next day, but both denied this at trial.

The victim, Danny Garrett, was never seen alive again. About seven months later, Danny's body was found over a cliff about five miles from the place where the argument occurred.

The record discloses that some time after defendant's argument with Danny, defendant was riding in a car with his brother Eric. He made Eric pull over to the side of the road in front of a church, and according to Eric, "he was drunk and he kept muttering out and then he said he shot Danny Kay."

Defendant's sister testified as a witness for the State that defendant "just said that he didn't mean to shoot his brother." Defendant's mother also testified as a witness for the State that defendant "just said that it was an accident. . . ."

The court submitted to the jury the possible verdicts of guilty of second degree murder, guilty of voluntary manslaughter, and not guilty. The jury found defendant guilty of voluntary manslaughter, and he was sentenced to 15 years in prison. Defendant appealed.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Harold M. White, Jr., for the State.*

*John P. Siskind and John Johnston for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Defendant first contends the trial court erred in not allowing his motions to dismiss at the close of the State's evidence and at the close of all evidence "because there was insufficient evidence to go to the jury to prove the crimes as charged." Although the evidence is largely circumstantial, it is clearly sufficient to require submission of the case to the jury and to support a verdict of voluntary manslaughter. This assignment of error is meritless.

STATE v. GARRETT

[93 N.C. App. 79 (1989)]

**[2]** Defendant next contends the trial court erred in denying his motions to instruct the jury "on accident because the evidence presented such instructions." This assignment of error has merit.

The trial court has a duty to instruct the jury on all substantial features of the case arising on the evidence. *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974). All defenses arising from the evidence presented during trial, including the defense of accident, are substantial features of a case and therefore warrant instructions. *State v. Loftin*, 322 N.C. 375, 362 S.E. 2d 613 (1988).

The death of a human being as a result of accident attaches no criminal responsibility to the act of the slayer. *State v. Faust*, 254 N.C. 101, 118 S.E. 2d 769 (1961). Where the killing was unintentional and the perpetrator acted without wrongful purpose in the course of a lawful enterprise and without criminal negligence, a homicide will be excused as an accident. *Id.*

In the present case, the State offered no eyewitness to the shooting and killing of defendant's brother. As stated before, the evidence against defendant is largely circumstantial. The only evidence as to exactly how the shooting occurred came from defendant himself through the testimony of his sister and mother. Both his sister and mother as witnesses for the State testified that defendant stated that the shooting was accidental. These statements were elicited by the State apparently in an effort to show defendant actually shot his brother, but the State seems to have gotten more than it bargained for. While the testimony of defendant's sister and mother as to what defendant told them was surely sufficient to raise an inference that defendant shot his brother, it also gives rise to an inference from which the jury could find defendant *accidentally* shot and killed his brother. Therefore we hold that the trial judge erred in not instructing the jury on the defense of accident.

We do not discuss the remaining assignments of error since they are not likely to reoccur at the next trial.

For the reasons stated, defendant is entitled to a new trial.

New trial.

Judges WELLS and LEWIS concur.